UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
ANGEL AGUSTIN ARGUETA ANARIBA,

                Petitioner,

              -v-                                    16-cv-1928 (KBF)

CHRISTOPHER SHANAHAN; SCOTT              OPINION & ORDER
MECHKOWSKI; JEH JOHNSON; and
LORETTA LYNCH, *each in his/her official
capacity*,

                Respondents.
------------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

     Angel Agustin Argueta Anariba ("Argueta") has spent the past 17 months in the custody of the Department of Homeland Security ("DHS"). He petitions this Court for a writ directing that respondents either release him or provide him with the type of bond hearing anticipated by <u>Lora v. Shanahan</u>, 804 F.3d 601 (2d Cir. 2015). Because the Court agrees that Argueta's detention is pursuant to 8 U.S.C. § 1226, it GRANTS Argueta's petition and directs respondents to provide him with an opportunity to seek bail in a hearing before an immigration judge.

I.     INTRODUCTION AND BACKGROUND

     The relevant facts are not disputed.[1] Argueta is a native and citizen of Honduras who entered this country without authorization in 1998. His criminal

---

[1] The Court's recitation of facts is derived from Argueta's petition (ECF No. 1), respondents' memorandum of law in opposition to the petition (ECF No. 8), the documents included in respondents' return to the petition (ECF No. 7),

record has three relevant entries: he was arrested and charged with driving under the influence in 2001; he was convicted of making a terroristic threat in 2004; and he was convicted of aggravated assault while armed and carrying a dangerous weapon in 2008. For the latter offense he was sentenced to 96 months imprisonment.

Argueta served his sentence without incident, and he was released from that sentence in December 2014. He was transferred directly to the custody of DHS and placed into removal proceedings. DHS charged Argueta with inadmissibility under two subparts of 8 U.S.C. § 1182: (a)(2)(A)(i)(I), which bans admission of an alien convicted of a crime involving moral turpitude, and (a)(6)(A)(i), which bans admission of an alien present in the United States without having been admitted or paroled. DHS also determined that he was subject to mandatory detention during removal proceedings pursuant to 8 U.S.C. § 1226(c).

Argueta contested his inadmissibility on crime-of-moral-turpitude grounds, but admitted his inadmissibility as an alien present without having been admitted or paroled. However, he applied for Withholding of Removal and protection under the Convention Against Torture ("CAT").

On June 2, 2015, the Immigration Judge ("IJ") assigned to Argueta's case denied his application for relief in a written decision. Argueta appealed the IJ's decision to the Board of Immigration Appeals, which upheld the IJ's decision and

---

and the declaration of Bryan Pittman, the Supervisory Detention and Deportation Officer who supervises the deportation officer with docket control over Argueta's case within ICE (ECF No. 8, Exh. 1).

dismissed Argueta's appeal on October 8, 2015. At that point Argueta's removal order became administratively final. 8 U.S.C. § 1101(a)(47)(B)(i). He had been detained, to that point, for approximately 10 months.

Argueta filed a Petition for Review of the BIA's decision before the Second Circuit on October 16, 2015. He simultaneously filed a Motion for a Stay of Removal. The government has opposed both Argueta's Petition for Review and his Motion for a Stay; both are currently pending before the Second Circuit. This posture brings him within the "forbearance policy" in effect in the Second Circuit. This policy, discussed further below, provides that the Department of Immigration and Customs Enforcement ("ICE") will not remove a detainee while judicial proceedings are pending. See, e.g., Wang v. Ashcroft, 320 F.3d 130, 147 (2d Cir. 2003).

On December 21, 2015, Argueta filed a motion for a bond hearing, citing as authority the Second Circuit's October 28, 2015 decision in Lora. His hearing was originally scheduled for January 20, 2016.

On December 29, 2015, Argueta filed a petition for U Nonimmigrant Status with United States Citizenship and Immigration Services ("USCIS"). A U visa is one set aside for victims of certain crimes who have suffered mental or physical abuse and provide assistance to investigations or prosecution of criminal activity. Were Argueta to receive a U visa, he would be permitted to remain in the United States regardless of the outcome of his removal proceedings. USCIS has determined that he is prima facie eligible for a U visa; however, USCIS regulations

3

provide that applicants with a history of violent or dangerous crimes will receive a U visa only in extraordinary circumstances. 8 C.F.R. § 212.17(b)(2). Argueta's petition is pending before USCIS.

On December 29, 2015, ICE commenced a Post-Order Custody Review ("POCR.") ICE issued a written Decision to Continue Detention on January 5, 2016, which briefly explained that the reasoning behind its decision was four-fold: Argueta's criminal history made him a risk to the well-being of the public; his lack of money, equities, or property in the United States made him a flight risk; his removal was expected in the reasonably foreseeable future; and he was an enforcement priority under a November 2014 directive of the Secretary of DHS.

The government failed to produce Argueta for his January 20, 2016 bond hearing. They did produce him for the rescheduled hearing date on February 18, 2016. The parties expressed their disagreement over Argueta's entitlement to a bond hearing, and the IJ asked the parties to brief the issue. On March 15, 2016, the parties again met before the IJ, who ruled that he did not have jurisdiction to hold a bond hearing because, in his determination, Argueta was in custody pursuant to 8 U.S.C. § 1231, rather than 8 U.S.C. § 1226. The same day, Argueta filed the instant habeas petition challenging the IJ's ruling under 28 U.S.C. § 2241, which authorizes a district court to issue a writ to anyone in custody in violation of the Constitution or law or treaties of the United States.[2]

---

[2] The record does not indicate whether Argueta also appealed the IJ's ruling that he was not entitled to a Lora bond hearing to the BIA. In any event, respondents have not argued that Argueta has failed to exhaust the administrative remedies available to him.

II.  LEGAL PRINCIPLES

   A.  <u>Statutory Framework</u>

Two provisions of Title 8 of the United States Code govern detention of aliens as they proceed through removal proceedings. Sections 1226 "governs the detention of aliens against whom the Government has initiated removal proceedings, but whose removal periods have not yet commenced." <u>Wang</u>, 320 F.3d at 146. Section 1331 "governs the detention of aliens subject to final orders of removal." <u>Id.</u> at 145. As discussed further below, this description of the statutory scheme opens the possibility of an overlap for aliens whose orders of removal have become administratively final but whose removal periods have not yet commenced.

8 U.S.C. § 1226(a) authorizes the Attorney General to issue a warrant by which "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Although detention is generally at the Attorney General's discretion, subpart (c) of § 1226 mandates that the Attorney General take into custody any alien who is inadmissible or deportable on the basis of listed provisions of Title 8.[3]

8 U.S.C. § 1231 governs the "[d]etention, release, and removal of aliens ordered removed." It directs that, with certain exceptions, "when an alien is

---

[3] Specifically, sec. 1226(c)(1) mandates detention of "any alien who –
(A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
(C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or
(D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title."

5

ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days," a period referred to as the "removal period." 8 U.S.C. § 1231(a)(1)(A).

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

Id. § 1231(a)(1)(B). Section 1231(a)(2) mandates that the Attorney General detain the alien during the removal period.

### B. Due Process

It is well-settled that the Fifth Amendment entitles aliens to due process in deportation proceedings. Reno v. Flores, 507 U.S. 292, 306 (1993). The due process rights of aliens detained under sections 1226 and 1231 have been the subject of decisions by the Second Circuit Court of Appeals and the Supreme Court.

In Lora v. Shanahan, 804 F.3d 601 (2d Cir. 2015), the Second Circuit held that "in order to avoid the constitutional concerns raised by indefinite detention, an immigrant detained pursuant to section 1226(c) must be afforded a bail hearing before an immigration judge within six months of his or her detention." Id. at 616. The Lora court further held that "the detainee must be admitted to bail unless the government establishes by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community." Id.

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court analyzed the due process rights of aliens held during and after a removal period. Zadvydas concerned a resident alien who could not be deported because none of the relevant countries would accept him. Id. at 684. Because indefinite detention without adequate safeguards could violate aliens' due process rights, the Supreme Court established a presumption of six months as a reasonable period of detention while an order of removal is carried out. Id. at 701. After that period elapses, an alien who "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" must be released, unless the government can "respond with evidence sufficient to rebut that showing." Id.

C. Forbearance Policy

In the Second Circuit, the government has put in effect a policy of forbearance. Under this policy, the government will not remove an alien while a petition for review is pending before the Second Circuit. In re Immigration Petitions for Review Pending in the U.S. Court of Appeals for Second Circuit, 702 F.3d 160, 162 (2d Cir. 2012). It appears that, as a result of this policy, the Second Circuit Court of Appeals has in some instances declined to act on motions for stays of removal when filed alongside petitions for review. See, e.g., Efstathiadis v. Holder, 752 F.3d 591, 599 n.5 (2d Cir. 2014) ("While a petition is pending in this Court, the Government's forbearance policy assures that the filing of a motion to stay removal, as has been done here, will suffice to prevent removal."); Rone v. Shanahan, No. 15 Civ. 9063, 2016 WL 1047393, at * 7 (S.D.N.Y. Mar. 10, 2016)

7

("Although Rone moved for a stay of removal, the Court of Appeals declined to act on the motion. Presumably, it declined to act because of the policy of forbearance in effect in the Second Circuit."); Luna-Aponte v. Holder, 743 F. Supp. 2d 189, 191 (W.D.N.Y. 2010).

III. ANALYSIS

Argueta's constitutional and statutory entitlement to a bond hearing, and the burdens of proof applicable to such a hearing, depends on which portion of the statutory scheme covers his current detention. When his DHS custody began on December 12, 2014, he was held pursuant to § 1226(c). On October 8, 2015 the BIA affirmed Argueta's order of removal and thereby rendered it administratively final; absent any further action on Argueta's part, his removal period would have started on that day and any subsequent detention would have been held pursuant to § 1231(a)(2).

Of course, Argueta did take further action: eight days later, on October 16, 2015, he filed a Petition for Review and moved to stay his removal proceedings. As discussed, the Court of Appeals has not yet acted on either of these applications. If that Court did order that Argueta's removal be stayed, § 1231(a)(1)(B)(ii) provides that his removal period would not yet have begun, and the authority for his detention would revert to § 1226(c). The question for the Court in the instant petition is the effect of a stay motion which, although neither granted nor denied, "will suffice to prevent removal" under the forbearance policy. Efstathiadis, 752 F.3d at 599 n.5.

District courts in this Circuit are divided as to whether the mere filing of a motion for a stay of removal, when combined with the forbearance policy, serves to toll the removal period and thus locate the movant within § 1226 rather than § 1231. Some courts have determined that the removal period continues unless a stay is formally granted. Mathews v. Philips, No. 13-CV-339-JTC, 2013 WL 5288166, at *3 (W.D.N.Y. Sept. 18, 2013); Leslie v. Herron, No. 10-CV-00515(A)(M), 2010 WL 4226561, at *4 (W.D.N.Y. Oct. 26, 2010). Others have held that, under the circumstances created by the forbearance policy, moving for a stay prevents the start of the removal period "as if a Court had issued a stay of removal pending judicial review." Rone v. Shanahan, No. 15 Civ. 9063 (AKH), 2016 WL 1047393, at *8 (S.D.N.Y. Mar. 10, 2016); see also Shehnaz v. Ashcroft, No. 04 Civ. 2578 (DLC), 2004 WL 2378371, at *2 (S.D.N.Y. Oct. 25, 2004).

In the Court's view, the latter position better, if imperfectly, captures the intent of the statutory scheme, which must be analyzed with an eye to "avoid[ing] serious constitutional concerns" about due process. Lora v. Shanahan, 804 F.3d 601, 614 (2d Cir. 2015). Operating together, the statutes evidently anticipate that an alien may be detained pursuant to § 1226, then briefly under § 1231, before returning to § 1226 custody; this is the pattern that would apply to any alien who received an administratively final order of removal and then successfully petitioned for a stay of removal. See 8 U.S.C. § 1231(a)(1)(B)(i) – (ii). Such an alien would await a decision from the Court of Appeals on the merits of his or her petition for review. This is the precise posture Argueta inhabits today.

The Second Circuit has explained that, in the context of removal proceedings, reviewing petitions of aliens unlikely to be removed whatever the result "undermines the Court's ability to allocate effectively its limited resources and determine whether adjudication of the petition will be merely an empty exercise tantamount to issuing an advisory opinion." In re Immigration Petitions for Review Pending in U.S. Court of Appeals for Second Circuit, 702 F.3d 160, 161 (2d Cir. 2012) (internal quotation marks omitted). The same "empty exercise" logic applies to motions for stays which, if granted, would only grant the movant the same relief already provided by the forbearance policy. The Court of Appeals for the Second Circuit "ha[s] been disproportionately burdened by a surge in immigration appeals and a corresponding surge in the size[] of [its] immigration docket[]," which renders the likelihood that it will act on an all-but-moot motion vanishingly small. Lora, 804 F.3d at 615-16. "In the absence of clarification, the Court of Appeals declination to act should not prejudice the petitioner." Rone, 2016 WL 1047393, at *7.

Section 1231 governs the detention of aliens while the government actively effects their removal. That is not the situation in which Argueta finds himself. Instead, he has a Petition for Review pending before the Second Circuit, and he will not be removed until it is ruled upon. Section 1226 controls custody decisions "pending a decision on whether the alien is to be removed from the United States." The Ninth Circuit has persuasively reasoned that "it is reasonable to consider the judicial review of a removal order as part of the process of making an ultimate 'decision' as to whether an alien 'is to be removed.'" Casas-Castrillon v. Dep't of

10

Homeland Sec., 535 F.3d 942, 948 (9th Cir. 2008) (quoting Prieto-Romero v. Clark, 534 F.3d 1053, 1062 (9th Cir. 2008)). It stands to reason that § 1226 governs Argueta's custody while his Petition for Review is pending before the Court of Appeals.[4]

Because Argueta is detained pursuant to § 1226(c), Lora mandates that he "must be afforded a bail hearing before an immigration judge within six months of his … detention." 804 F.3d at 616. It also mandates that he "must be admitted to bail unless the government establishes by clear and convincing evidence that [he] poses a risk of flight or a risk of danger to the community." Id. This standard applies even though Argueta, unlike the petitioner in Lora, has already received an order of removal affirmed by the BIA. The only authority the Lora court cited in selecting this standard was Rodriguez v. Robbins, 715 F.3d 1127 (9th Cir. 2013). Rodriguez dealt with aliens not yet subject to a removal order, but it borrowed the relevant standard from Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011), which dealt with the allocation of the burden of proof at bond hearings for aliens who, like Argueta, were "facing prolonged detention while their petitions for review of their

---

[4] Respondents argue that this interpretation is foreclosed by Wang v. Ashcroft, 320 F.3d 130 (2d Cir. 2003). In that case, the petitioner argued that although his removal order "ha[d] not been formally stayed," his detention was nonetheless pursuant to § 1226 while he pursued habeas relief. Id. at 147. The Court of Appeals remarked that "even if we accept this assertion—which we do not—Wang's due process claim necessarily fails because his removal period commences at the moment we file this decision." Id. There is no indication that Wang came within the forbearance policy. In addition, the Second Circuit's quote indicates that the posture of his case meant that its decision mooted the argument they rejected in an aside. Respondents' argument that Wang answers the statutory question in the instant case is also inconsistent with the Lora court's citation of Luna-Aponte v. Holder, 743 F. Supp. 2d 189 (W.D.N.Y. 2010) as a case analyzing the due process requirements of § 1226, as that case also featured a petitioner whose stay was the result of the forbearance policy. See Lora, 804 F.3d at 615; Luna-Aponte, 743 F. Supp. 2d at 196-97.

11

removal orders are pending." Id. at 1200, 1203. In light of this history, the same standard and burden of proof identified in Lora should apply to Argueta.

Finally, the Court emphasizes the limited reach and impact of its decision today. Argueta was detained for 10 months before this removal order became administratively final; had those 10 months not predated Lora by three weeks, he would have been obviously entitled to a bond hearing after his first 6 months of detention. Following Lora, few aliens are likely to reach the stage of proceedings Argueta has reached without having appeared for a bond hearing before a neutral arbiter of his or her risk of flight and danger to the community. Those that do are entitled by statute and by the Constitution to such a hearing while the Court of Appeals considers the merits of their petitions.

IV. CONCLUSION

For the reasons discussed above, the petition for habeas corpus is GRANTED. ICE shall provide Argueta with a Lora bond hearing before an immigration judge within 30 days.

SO ORDERED.

Dated:    New York, New York
           June 2, 2016

_____
KATHERINE B. FORREST
United States District Judge