USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: December 14, 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
ANGEL AGUSTIN ARGUETA ANARIBA,

                Petitioner,

        -v-

CHRISTOPHER SHANAHAN, et al.,

                Respondents.
------------------------------------------------------------------ X

16-cv-1928 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

      This matter is now before this Court for the fourth and final time on petitioner Angel Agustin Argueta Anaribia's ("Argueta" or "petitioner") claim that he has been deprived of his right to an adequate bond hearing under Lora v. Shanahan, 804 F.3d 601 (2d Cir. 2015). As of the date of this opinion, Argueta has been detained by Immigration and Customs Enforcement ("ICE") for approximately three years.

      Argueta's motion to compel his release once again argues that respondents have not provided him with an adequate Lora hearing because the Immigration Judge ("IJ") failed to apply the appropriate "clear and convincing" legal standard in an individualized analysis of his future dangerousness and/or risk of flight. (See generally Mem. of Law in Supp. of Mot. to Compel Pet.'s Release ("Pet. Mem."), ECF No. 42.) This Court disagrees. For the reasons stated below, the Court hereby DENIES Argueta's petition in full.

I.   BACKGROUND

The Court assumes familiarity with the relevant facts of this matter, which are discussed in its decisions at ECF Nos. 10, 25, and 39.  The Court refers the reader to those opinions for the facts underlying Argueta's unauthorized entry, criminal history, immigration detention, and efforts to compel release in this Court.  Below, the Court briefly reviews those facts most relevant to resolution of the current petition.

On June 2, 2016, this Court held that Argueta qualified for a Lora hearing.  (ECF No. 10.)  After a hearing was held in his absence on June 21, 2016, Argueta filed a motion to compel release on the basis that his unwilling absence rendered that Lora hearing procedural improper.  (ECF Nos. 12-14.)  This Court agreed that the hearing was procedurally deficient, and ordered that the Government provide Argueta with an adequate Lora hearing within twenty days or release him.  (ECF No. 25.)  Accordingly, a second Lora hearing was held on November 7, 2016; Argueta appeared by video conference.

During the November 7, 2016 hearing, the IJ ruled on the record that "the Government has met its burden of proof that [Argueta] is a danger to the community and a flight risk." (Nov. 7, 2016 Trans. At 14:3-5.)  On February 12, 2017, Argueta filed a second motion to compel release on the basis that the IJ did not properly hold the Government to the requisite "clear and convincing" burden of proof.  (ECF No. 28-30.)  Noting that the IJ did not issue a written decision and did not mention or discuss Lora's clear and convincing standard at any point during the

November 7, 2016 hearing, this Court agreed with Argueta and remanded the action to the IJ "for an expeditious clarification of the standard applied an individualized analysis of that standard's application here." (ECF No. 39.)

On August 16, 2017, the IJ issued a Memorandum Decision in compliance with this Court's directive. (See generally Mem. Dec. of the IJ ("IJ Bond Dec."), ECF No. 40.) Therein, the IJ clearly and unequivocally recognized that "the government bears the burden to establish 'by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community.'" (Id. at 2-3 (citing Lora, 804 F.3d at 612).) The IJ then provided a complete and thorough analysis of the evidence regarding Argueta's conduct before, during, and after his imprisonment, and concluded that "DHS has established by clear and convincing evidence that [Argueta] is a risk of danger to the community, a 'specially dangerous individual' and a flight risk." (Id. at 2.)

In response, Argueta filed a third motion to compel his release on October 23, 2017. (ECF Nos. 41-42.) Argueta's petition argues, in sum and substance, that the IJ's written decision fails to properly apply the requisite "clear and convincing" standard in determining whether Argueta is a danger to the community and/or flight risk. (See Pet. Mem. at 6.) The heart of Argueta's argument is that the IJ: (1) did not properly explain how he applied the "clear and convincing standard" (stating instead that he "assigned greater weight" to Argueta's "violent behavior" and "lesser weight" to Argueta's rehabilitation efforts); (2) did not address any of

3

the factors that should be weighed; and (3) did not adequately consider evidence of Argueta's recent rehabilitation. (Id. at 6-8.)

The Government opposed Argueta's petition for release on November 21, 2017 (ECF No. 45), and Argueta replied on December 5, 2017 (ECF No. 48). For the reasons stated below, the Court concludes that the IJ properly applied the requisite legal standard under Lora, that there are no grounds to second guess the IJ's findings or conclusions, and that Argueta's petition for release must be denied on that basis.

## II. LEGAL PRINCIPLES

"The Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence is lawful or unlawful, temporary or permanent." Lora, 804 F.3d at 613 (quoting Zadvydas v. Davis, 533 U.S. 678, 693 (2001)). It is well-settled that "the Fifth Amendment entitles aliens to due process in deportation proceedings." Reno v. Flores, 507 U.S. 292, 306 (1993). In Lora, the Second Circuit held that "in order to avoid the constitutional concerns raised by indefinite detention, an immigrant detained pursuant to section 1226(c) must be afforded a bail hearing before an immigration judge within six months of his or her detention." 804 F.3d at 616.

Constitutional due process requires that a person detained pursuant to 8 U.S.C. § 1226(c) "must be admitted to bail unless the government establishes by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community." Lora, 804 F.3d at 616; see also Rodriguez v. Robbins,

4

715 F.3d 1127, 1144 (9th Cir. 2013) ("[B]ond hearings must be held before a neutral IJ with the government bearing the burden of proof by clear and convincing evidence."); Singh v. Holder, 638 F.3d 1196, 1203-04 (9th Cir. 2011) ("Because it is improper to ask the individual to 'share equally with society the risk of error when the possible injury to the individual'—deprivation of liberty—is so significant, a clear and convincing evidence standard of proof provides the appropriate level of procedural protection." (quoting Addington v. Texas, 441 U.S. 418, 427 (1979)).

A district court will not second-guess an IJ's decision "with respect to the appropriate weight to be assigned to the evidence presented at his bond hearing." Hassan v. Holder, No. 11-cv-7157, 2014 WL 142479, at *9 (S.D.N.Y. Apr. 15, 2017). However, failure to apply the correct legal standard and to hold the government to its burden of proof renders a bond hearing "constitutionally deficient" under Lora. See Cepeda v. Shanahan, No. 15-cv-9446, 2016 WL 3144394, at *2 (S.D.N.Y. Apr. 22, 2016); Vargas v. Davies, No. 15-cv-3525, 2016 WL 3044850, at *4 (S.D.N.Y. May 27, 2017) ("Petitioner may have a viable constitutional claim to the extent he is asserting that the IJ effectively failed to apply a clear-and-convincing standard by relying on evidence that can never alone satisfy that standard as a matter of law.").

It is particularly important that the Government be held to the "clear and convincing" burden of proof in the immigration detention context because civil removal proceedings, unlike criminal proceedings, "are nonpunitive in purpose and effect." Zadvydas v. Davis, 533 U.S. 678, 690 (2001); see also Cooper v. Oklahoma, 517 U.S. 348, 363 (1996) ("[D]ue process places a heightened burden of proof on the

5

State in civil proceedings in which the 'individual interests at stake . . . are both particularly important and more substantial than mere loss of money.'" (quoting Santosky v. Kramer, 455 U.S. 745, 756 (1982)). Due process requires an individualized determination of a detainee's risk of flight and future dangerousness. Demore v. Kim, 539 U.S. 510, 531 (2003) (Kennedy, J., concurring) ("[D]ue process requires individualized procedures to ensure there is at least some merit to [the Government's] charge[.]"). Detention on the basis of dangerousness in civil immigration proceedings is appropriate "only when limited to specially dangerous individual and subject to strong procedural protections." Zadvydas, 533 U.S. at 691.

III. DISCUSSION

The sole issue here is whether the IJ correctly applied the "clear and convincing" legal standard under Lora to his determination that Argueta is "a risk of danger to the community, a 'specially dangerous individual' and a flight risk." (IJ Bond Dec. at 2.) If so, the Court has no reason to second guess or disturb the IJ's conclusions. See Hassan, 2014 WL 142479, at *9 (holding that a district court will not second-guess an IJ's decision "with respect to the appropriate weight to be assigned to the evidence presented at his bond hearing"). Having carefully reviewed the IJ's written decision and the evidence before him, the Court concludes that the IJ clearly identified and properly applied the "clear and convincing"

standard as directed, and that there is no basis to disturb his conclusion regarding Argueta's risk of danger and/or flight.[1]

In concluding that Argueta is a "specially dangerous individual", the IJ considered Argueta's seven-year history of criminal conduct from 2001-2007. (See IJ Bond Dec. at 3.) In 2008, Argueta was convicted of aggravated assault while armed and carrying a dangerous weapon after he "approached [a] victim and stabbed him on his head with a folding pocket knife." (Id.) "The entire blade of the knife entered the victim's head" and multiple eyewitnesses reported that Argueta "fled the scene" after the attack. (Id.) The IJ stated that he was "deeply concerned" by this dangerous behavior, and noted that the attack was done with "such force that the entire blade of the knife broke through the victim's skull." (Id.) The IJ further noted that Argueta "ha[d] other criminal issues" during the seven-year period from 2001-2007, including "drunk driving and making a terroristic threat." (Id.) According to the IJ, these violations demonstrated a "propensity to commit serious criminal offenses" and Argueta's "pattern of behavior became more and more dangerous over time." (Id. at 3-4.)

Argueta argues that the IJ "considered only [his] criminal record", and "[did] away with consideration of any and all factors other than criminal activity." (See Pet. Mem. at 7 (emphasis added).) According to Argueta, this renders the IJ's

---

[1] As discussed infra, the IJ correctly noted that it was "not necessary for DHS to establish that [Argueta] poses a flight risk" given the IJ's conclusion regarding risk of dangerousness. (IJ Bond Dec. at 4.) Due process only requires that the government establish by clear and convincing evidence "that the immigrant poses a risk of flight or a risk of danger to the community." Lora, 804 F.3d at 616 (emphasis added).

7

ultimate conclusion "unreasonable", because he failed to take into account the potential reasons for Argueta's criminal behavior or the substantial evidence of rehabilitation since then, and did not conduct "an individualized, prospective assessment as to whether Mr. Argueta poses a risk of danger." (Id. at 7-8.)

But Argueta's characterization of the IJ's decision is incorrect. In fact, the IJ clearly considered evidence submitted by Argueta to "rebut the showing of dangerousness", including inter alia the fact that he: (1) "did not incur any disciplinary infractions while incarcerated and had no history of domestic violence"; (2) took part in various educational programs while in detention; (3) had serious medical conditions; (4) has a U.S. citizen son who resides in the U.S. with his biological mother. (IJ Bond Dec. at 3.) The IJ weighed that evidence, but reasonably concluded that Argueta's good behavior in a controlled environment was "very substantially outweigh[ed]" by the nature and extent of his "very serious criminal record", and that the evidence as a whole "strongly indicates that [Argueta] will be a danger to the public if he is released from detention." (Id. at 3-4.) The IJ then specifically concluded that "DHS met its burden by clear and convincing evidence to establish that [Argueta] poses a risk of danger to the community." (Id. at 4.) Argueta has every right to disagree with the IJ's weighing of the evidence, but it is simply untrue that the IJ failed to consider evidence other than his prior criminal record.

As for risk of flight, the IJ correctly noted that it was "not necessary for DHS to establish that [Argueta] poses a flight risk" because they carried their burden

with respect to risk of danger.  (Id. at 4.)  Nonetheless, the IJ reasonably concluded, based on the record evidence, that the Government carried its burden of providing by "clear and convincing" evidence that Argueta poses a flight risk.  The IJ pointed specifically to the fact that Argueta: (1) "has shown a tendency of disregarding the laws of the U.S."; (2) had already been denied asylum and withholding of removal; and (3) was extremely unlikely to succeed in his application for U visa given his history of violent crimes.  (Id. at 4.)  Argueta may disagree with the IJ's decision regarding his risk of flight, but the Court easily concludes it is supported by "clear and convincing" evidence.

In reality, Argueta's petition seeks to relitigate the merits of his immigration status before this Court.  (See, e.g., Pet. Mem. at 10-14 (arguing that the record evidence does not "clearly and convincingly" establish that Argueta poses a risk of danger and/or flight).)  But as previously noted, this Court will not disturb the IJ's careful and thorough analysis of the record evidence assuming that he applied the correct legal standard.  It is eminently clear that he did.

Having considered the other arguments raised in Argueta's third motion to compel release, the Court finds them similarly unavailing.  For those and the other reasons stated above, the Court therefore DENIES Argueta's motion to compel release.

IV. CONCLUSION

For the reasons stated above, the Court DENIES petitioner's third motion to compel his release at ECF No. 41.

9

The Clerk of Court is directed to terminate all open motions and terminate this action.

SO ORDERED.

Dated:   New York, New York
         December 14, 2017

_____
KATHERINE B. FORREST
United States District Judge